IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TALIB ALSAIFULLAH,<br><br>                    Petitioner,<br><br>vs.<br><br>BRANDON SMITH, Superintendent,<br>Greene Correctional Facility,[1]<br><br>                    Respondent. | No. 9:14-cv-01309-JKS<br><br>MEMORANDUM DECISION |

       Talib Alsaifullah, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. In 2011, a jury convicted Alsaifullah of third-degree burglary and petit larceny, and the New York Appellate Division affirmed his conviction on appeal. *People v. Alsaifullah*, 946 N.Y.S.2d 273, 276 (N.Y. App. Div. 2012). Alsaifullah is now in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Greene Correctional Facility. In his current Petition before this Court, Alsaifullah does not contest his judgment of conviction but rather challenges the constitutionality of a prison disciplinary hearing arising out of his physical altercation with a prison guard and possession of a weapon.[2] Respondent has answered, and Alsaifullah has replied.

---

      [1]     Brandon Smith, Superintendent, Greene Correctional Facility, is substituted for Darwin LaClair, Superintendent, Franklin Correctional Facility. FED. R. CIV. P. 25(c).

      [2]     In 2013, Alsaifullah filed in this Court a § 2254 habeas petition with respect to his judgment of conviction. The undersigned judge denied that petition on January 6, 2015, in Case No. 9:13-cv-00154-JKS.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 7, 2013, Alsaifullah was charged with violating rules of inmate behavior 113.10 (weapon possession); 104.11 (violent conduct); 100.11 (assault on staff); 107.10 (interference); and 104.13 (disturbance). The Appellate Division described the following facts underlying the charges against Alsaifullah:

> As petitioner approached the entrance to the facility gym, the alarm on the metal detector sounded and the correction officer who was monitoring it proceeded to conduct a pat frisk of petitioner and scanned him with a hand-held metal detector. During this process, the metal detector's alarm activated as the officer passed it over petitioner's right shoe, at which point petitioner struck the officer and a physical altercation ensued. Petitioner was eventually brought under control with the assistance of staff and a metal shank with a cloth handle was recovered from his right shoe. As a result, he was charged in a misbehavior report with possessing a weapon, assaulting staff, creating a disturbance, engaging in violent conduct and interfering with an employee.

*In re Alsaifullah v. Fischer*, 987 N.Y.S.2d 717, 718 (N.Y. App. Div. 2014).

On February 13-19, 2013, Hearing Officer Joseph Wolczyk conducted a Tier III disciplinary hearing.[3] Officer Wolczyk read the misbehavior report into the record, and Alsaifullah pleaded not guilty to the charges. Alsaifullah acknowledged that he had been served prior to the hearing with a copy of the misbehavior report and confirmed that he understood that he could present witnesses and evidence at the hearing and that he could make procedural objections and defenses that would be considered by the hearing officer. He further stated that he had requested and received assistance during the hearing, although he indicated that he was not satisfied with the initial assistance provided because he had not been given all documents requested. The hearing officer noted the objection.

---

[3] "Tier III hearings concern the most serious violations and may result in unlimited [special housing unit ("SHU")] confinement (up to the length of the sentence) and recommended loss of 'good time' credits." *Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998).

When given the opportunity to make a statement, Alsaifullah indicated that he had a dispute over legal mail earlier in the day with Officer D. Walters, who had written the misbehavior report, and Walters had assaulted him and "set [him] up" with the charges in retaliation. Alsaifullah argued that various memoranda about the incident were inconsistent with the misbehavior report and that Walter's injury to his right hand was not consistent with Walter's assertion in the misbehavior report that he had punched Alsaifullah in the stomach three times and had flung him to the floor.

Two inmates testified on behalf of Alsaifullah that they had overheard him earlier that day having an argument with Officer Walters over the legal mail. Alsaifullah had also sought the testimony of the nurse who had attended to him after the incident to testify as to his injuries. The hearing officer denied the request on the ground that her testimony would not be relevant to the proceedings as she was not present for the incident. Alsaifullah also wanted various documents which he claimed that his assistant had refused to provide. In response, the hearing officer arranged for another assistant to help Alsaifullah with the proceedings. Alsaifullah subsequently indicated that he was satisfied with that assistance, and the record does not reflect that Alsaifullah informed the officer that he was denied any documents.

The record further reflects that Alsaifullah argued with the hearing officer throughout the proceedings. After numerous warnings, the hearing officer had Alsaifullah removed. The officer later indicated that his removal was because Alsaifullah was "argumentative and uncooperative, obstructing the hearing process." At the time of Alsaifullah's removal, the two inmates had testified as well as an officer-witness who had written a memorandum about the conclusion of the incident but was not present when the incident began.

Officer Walters later testified, confirming the accuracy of his misbehavior report as well as a memorandum he wrote which added detail not in the misbehavior report as to how Alsaifullah was subdued, including that Walters struck Alsaifullah three times in the stomach when Alsaifullah tried to break free. When shown a picture of the weapon, Walters confirmed that it was the weapon he had found on Alsaifullah, and he denied planting it on him. Walters denied issuing the report in retaliation for any legal mail dispute and denied having any issue with Alsaifullah over legal mail earlier in the day. Although he acknowledged Alsaifullah's grievance in that regard, Walters did not recall opening legal mail in front of him. A number of other officers testified to the accuracy of their memoranda about the incident, but those witnesses stated that they had arrived at the scene after Walters had the situation under control and were not present when the incident began.

On February 19, 2013, Officer Wolczyk found Alsaifullah not guilty of creating a disturbance, but guilty of violent conduct, assault on staff, weapon possession, and interference with an employee. He imposed a penalty of 7 months' confinement in SHU, as well as loss of packages, commissary, and phone privileges during that time. He also recommended a 9-month loss of good time credit.

Alsaifullah filed a *pro se* administrative appeal, arguing that: 1) he was deprived of his right to be present at the hearing, in violation of prison hearing rules; 2) he was unable to controvert the evidence or witness testimony presented in his absence; 3) he was not given the opportunity to hear that testimony; 4) the hearing officer failed to make available to him the complete incident report; 5) the superintendent of the prison failed to complete the full report prior to the conclusion of the hearing; and 6) the hearing officer failed to consider as a mitigating

factor Alsaifullah's prior good behavior and did not consider inconsistencies in the evidence against him. Alsaifullah also filed an addendum to his appeal, in which he asserted that: 1) the hearing officer improperly relied on Officer Walters' testimony; 2) the record did not reflect that Alsaifullah was not cooperating, and thus he was wrongfully removed from the proceeding; 3) testimony taken outside of his presence should have been made available to him; 4) the hearing officer erred in denying Alsaifullah's request to have a nurse testify; 5) the nurse's testimony about Alsaifullah's injuries would have established that his injuries were inconsistent with Officer Walters' testimony and report; 6) the hearing officer did not consider a report from another officer witness that Walters had abrasions on his right hand; and 7) the evidence against him was insufficient because the other officer witnesses did not see the removal of a weapon from his shoe.

Counsel representing Alsaifullah also submitted an addendum to the appeal, arguing that: 1) because Alsaifullah had argued that his injuries were inconsistent with Officer Walters' testimony about the force used, the hearing court's denial of Alsaifullah's request to see photographs of his own injuries deprived Alsaifullah of his right to present a defense; and 2) the evidence impeached Officer Walters' credibility and thus the guilty findings were not supported with substantial reliable evidence.

On December April 18, 2013, the hearing officer's disposition was affirmed.

Alsaifullah, proceeding *pro se*, then initiated an Article 78 proceeding in county court, challenging the results of his Tier III hearing. Upon the People's request, the county court ordered the petition transferred to the Appellate Division. In his brief to the Appellate Division, Alsaifullah renewed his claim that the sanction was not supported by substantial evidence and

alleged that the hearing officer was biased, denied him access to necessary documents, and improperly removed him from the hearing. The Appellate Division affirmed the Tier III disciplinary determination in a reasoned opinion issued on June 26, 2014. *In re Alsaifullah*, 987 N.Y.S.2d at 719. Alsaifullah filed a *pro se* application for leave to appeal the denial to the New York Court of Appeals, which was summarily denied on October 16, 2014. *In re Alsaifullah v. Fischer*, 20 N.E.3d 661 (N.Y. 2014). Alsaifullah timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 23, 2014.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Alsaifullah challenges his prison disciplinary determination, arguing that: 1) his due process rights were violated because a) he was denied documentary evidence, b) documents were altered, c) he was denied the ability to question witnesses, d) the hearing officer was biased, and e) he was unjustly removed from the hearing; and 2) the disposition was not supported by substantial evidence.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a

decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S.

722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

## IV. DISCUSSION

A.  Procedural Due Process

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special

confinement that imposes an atypical hardship."[4]  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).

To succeed under a procedural due process claim based on the loss of good time credits or SHU confinement, the petitioner must establish that: (1) he was not provided a written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a nonneutral hearing body conducted the hearing; (3) he was not afforded the opportunity to present evidence and call witnesses; (4) he was not granted assistance to understand and prepare his defense; or that (5) the factfinder failed to provide a written statement of the evidence relied upon in making his decision and the reasons for the decision.  *See Wolff*, 418 U.S. at 563-67.  In his Petition before this Court, Alsaifullah alleges that his procedural due process rights were violated under the second and third elements described above (rights to a neutral factfinder and to present a case).

---

[4]  As a threshold matter, an inmate asserting a violation of his right to due process must first establish that he had a protected liberty interest in remaining free from the confinement that he challenges and, if so, that Respondent deprived the petitioner of that liberty interest without due process.  *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  "[A] prisoner has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship in relation to the ordinary incidents of prison life.'" *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  It is not entirely clear, however, if the 9-month period of SHU confinement imposed upon Alsaifullah is also sufficient to implicate a liberty interest.  *See Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (finding that disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life" (quoting *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)).  However, the Court need not decide that issue because it is well-settled that a prisoner charged with violating a prison regulation which could result in the loss of good time credit is entitled to minimal due process protections.  *Wolff v. McDonnell*, 418 U.S. 539, 563-65 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 482, 487-88 (1973).

1. Neutral Factfinder

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing cases); *see also* 7 NYCRR § 253.1 ("The disciplinary hearing officer shall be responsible for conducting disciplinary hearings in an impartial manner."). An impartial hearing officer is "one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess the evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990); *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard"). Nevertheless, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Allen*, 100 F.3d at 259 (citing cases).

An independent review of the record here fails to show any bias or evidence of prejudgment sufficient to rise to the level of a constitutional violation. Rather, the record reflects that the hearing officer granted most of Alsaifullah's requests, including appointing a new assistant to help him with the proceeding. Alsaifullah's bias claim appears to be based on his removal from the hearing, but as discussed *infra*, the record supports the hearing officer's determination that Alsaifullah was being disruptive to the proceedings. Furthermore, the fact that the hearing officer ruled against Alsaifullah is insufficient to demonstrate bias against him. *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality."). Alsaifullah

thus fails to demonstrate a due process violation based on the alleged impartiality of the hearing officer.

      2.      Right to Present a Case

Alsaifullah further contends that he was deprived of his right to present a case because he was denied documentary evidence, documents were altered, he was precluded from questioning witnesses, and he was wrongfully removed from the hearing.

An "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. However, "a hearing officer does not violate due process by excluding irrelevant or unnecessary" evidence. *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d. Cir. 1999); *see also Amaker v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388, *10 (S.D.N.Y. 2002) ("[A]n inmate's right to present documentary evidence in his defense does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests for his case[,] [e]ven when documents are relevant and obtainable.").

Alsaifullah does not detail in his Petition the documents he was denied or which documents were altered. It t is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief. *See, e.g.*, *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

Likewise, the record reflects that, while he was present at the hearing, Alsaifullah was able to question witnesses. To the extent that his claim is that he was denied such opportunity after he was removed from the hearing, that claim must fail because, as discussed *infra*, Alsaifullah cannot show that his removal was improper. As the Second Circuit has held:

> It is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate. *See Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989) (citing *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987)). Nor does an inmate have a constitutional right of confrontation. *See Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (citing *Wolff*, 418 U.S. at 567-68, 94 S. Ct. 2963).

*Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999).

And to the extent Alsaifullah's claim that he was "denied questioning witnesses" refers to the hearing officer's denial of Alsaifullah's request to question the nurse, a prisoner does not have an absolute right to present witnesses at a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 320 (1976) ("The right to call witnesses . . . is thus circumscribed by the necessary mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." (internal quotations omitted)); *see also Walker v. McClellan*, 126 F.3d 127, 129-30 (2d Cir. 1997). "Due process requires that an inmate 'has a restricted right to call witnesses' at a disciplinary hearing, though a hearing officer may 'refuse to call witnesses whose testimony may be reasonably regarded as duplicative or non probative.'" *Wright v. Escrow*, No. 10 Civ. 6502, 2013 WL 1826053, at *7 (W.D.N.Y. Apr. 30, 2013) (quoting *Feliciano v. Selsky*, 199 F.3d 1322 (2d Cir. 1999)). The United States Supreme Court has explained that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case. *Wolff*, 418 U.S. at 566-67. Here, the request was

denied on relevance grounds because the nurse did not witness the accident. And because Alsaifullah sought to introduce her testimony as to his injuries, such request could be properly denied as duplicative because her treatment notes were included in the incident report and the Respondent did not dispute those records. Alsaifullah argued that his injuries were inconsistent with the incident report, which stated that Alsaifullah had been punched in the stomach, but the nurse's report as included in the incident report reflects that Alsaifullah suffered an abrasion on his head and had a red mark on his ear but did not have visible markings on other areas of his body such as his stomach. It thus does not appear that Alsaifullah sought to question the nurse about matters not included in the report.

Finally, Alsaifullah's claim that he was wrongfully removed from the hearing does not warrant habeas relief. New York state law provides that an inmate shall be present for a disciplinary hearing unless "excluded for reasons of institutional safety or correctional goals." 7 N.Y. Code R. & Reg. § 253.6(b). To the extent Alsaifullah argues that his removal violated this mandate, such argument presents only a question of state law not cognizable on federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). Alsaifullah does not point to, nor has this Court found on its own review, any Supreme Court precedent finding unconstitutional a state prisoner's removal from a

13

disciplinary hearing on the basis of disruptive conduct. *See* 28 U.S.C. § 2254(d); *Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005) (Appellate Division did not unreasonably apply Supreme Court precedent in the absence of a definitive ruling by that Court on the subject). Moreover, the transcript hearing, which is included in the record before this Court, reflects that the officer gave Alsaifullah a number of warnings, and Alsaifullah nonetheless continued to argue with the officer. It thus appears that the officer was authorized under New York law to have Alsaifullah removed. *See, e.g.*, *Rupnarine v. Prack*, 986 N.Y.S.2d 716, 717 (N.Y. App. Div. 2014) (petitioner's exclusion from second day of hearing justified where he "continually interrupted and spoke over the Hearing Officer" and was repeatedly warned that he would be removed). Alsaifullah thus cannot show any procedural due process violation.

B.      Substantive Due Process

Alsaifullah additionally contends that there is insufficient evidence to support the hearing officer's adverse determination. Where a prisoner claims he was denied due process in a prison disciplinary hearing because he was found guilty based on insufficient evidence, the claim must be rejected if there was "some evidence" to support the decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). In *Hill*, the Supreme Court stated that:

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56.

In this case, the Appellate Division determined that the disciplinary finding was supported by "substantial evidence" and thus met the New York State standard for evidentiary sufficiency at a disciplinary hearing. *See Foster v. Coughlin*, 565 N.E.2d 477, 478 (N.Y. 1990)

14

(New York State law requires prison disciplinary rulings to be supported by "sufficiently relevant and probative" information "to constitute substantial evidence"). This standard is considerably stricter than the Federal "some evidence" standard. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000).

In this case, the hearing officer explained that, in making his determination, he relied upon: Officer Walters' misbehavior report and testimony; a photograph of the weapon found; the testimony of six other officers; the testimony of two inmates regarding an earlier incident involving legal mail; and Alsaifullah's testimony and prior good behavior. The evidence submitted at the disciplinary hearing certainly was sufficient to meet Hill's undemanding "some evidence" standard. Alsaifullah alleges that it was not because Officer Walters' report and testimony, the main evidence against him, was not sufficiently corroborated and was controverted by other evidence submitted. But Officer Walters' testimony was sufficient to support the hearing officer's determination. *See, e.g.*, *Booker v. Maly*, No. 9:12-cv-246, 2014 WL 1289579, at *10-11 (N.D.N.Y. 2014) (charging officer's testimony at disciplinary hearing alone sufficient to constitute "some" evidence supporting the hearing officer's determination of guilt). Although Alsaifullah alleges that Officer Walters' testimony and report were fabricated, it was within the hearing officer's province to assess the credibility of the witnesses. *See Johnson v. Goord*, 487 F. Supp. 2d 377, 385 (S.D.N.Y. 2007) ("While [petitioner] may find [the officer's] testimony incredible, it is not the role of the Court to evaluate the credibility of witnesses at a disciplinary hearing." (citing *Hill*, 472 U.S. at 455)). Accordingly, Alsaifullah cannot prevail on this claim either.

## V. CONCLUSION

Alsaifullah is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: April 20, 2016.

        /s/ James K. Singleton, Jr.
        JAMES K. SINGLETON, JR.
        Senior United States District Judge